IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DOYALE M. BLACKSMITH, | ) |
| Petitioner, | ) |
| v. | ) Case No. 3:20-cv-00036 |
| | ) Judge Trauger |
| TONY MAYS, Warden, | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

**I. Introduction**

Doyale Blacksmith, an inmate of the Riverbend Maximum Security Institution (RMSI) in Nashville, Tennessee, filed a pro se Petition for the Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) and was granted leave to proceed in forma pauperis in this court. (Doc. No. 6.)

In 2014, the petitioner was convicted by a jury in Davidson County Criminal Court of aggravated rape, aggravated kidnapping, and aggravated stalking, and was sentenced to 35 years in prison. (Doc. No. 1 at 9; Doc. No. 9-1 at 56–58.) He now challenges the legality of his conviction and sentence, claiming violations of his Sixth and Fourteenth Amendment rights to counsel and due process, respectively. (Doc. No. 1 at 1–4, 15–19.)

Upon initial review of the Petition, the court directed the respondent to file the state-court record and to respond to the petitioner's claims. (Doc. No. 6.) In his Answer (Doc. No. 10), the respondent's first defense to the petitioner's claims is that the Petition was not timely filed under the applicable statute of limitations. The petitioner subsequently filed a document that may be liberally construed as a Reply to the respondent's Answer (Doc. No. 13) but did not respond to the

respondent's timeliness defense. However, the petitioner seems to have anticipated the defense at the time he filed the Petition, when he also provided a separate notice directed to the attention of the Clerk of Court that attempts to explain a short delay in filing. (Doc. No. 2.) Accordingly, the court considers both the respondent's procedural defense and the merits of this case to be fully briefed.

Review of the pleadings and the record reveals that an evidentiary hearing is not needed in this matter. *See Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (stating that evidentiary hearing is not required "if the record clearly indicates that the petitioner's claims are either barred from review or without merit"). Therefore, the court shall dispose of the petition as the law and justice require. Rule 8, Rules Gov'g § 2254 Cases. As explained below, this action will be dismissed.

**II. Procedural History**

Following the petitioner's 2014 conviction and sentencing, he appealed only his conviction for aggravated rape to the Tennessee Court of Criminal Appeals (TCCA). (*See* Doc. No. 9-9.) The TCCA affirmed, and the Tennessee Supreme Court denied discretionary review on November 24, 2015. *State v. Blacksmith*, No. M2014-01417-CCA-R3-CD, 2015 WL 4556923 (Tenn. Crim. App. July 29, 2015), *perm. app. denied* (Tenn. Nov. 24, 2015); (Doc. Nos. 9-11–9-13). The petitioner did not seek review in the U.S. Supreme Court.

The petitioner submitted a pro se petition for post-conviction relief in state court which was stamped "filed" on March 28, 2016.[1] (Doc. No. 9-16 at 3.) The post-conviction trial court appointed counsel, who filed an amended petition. (Doc. No. 9-14 at 28–31.) After holding an evidentiary hearing, the trial court denied the amended petition. (*Id.* at 51–54.) The petitioner

---

[1] The post-conviction petition was not dated, but it was notarized on March 23, 2016 (Doc. No. 9-16 at 14) and stamped "received" in the prison mailroom on March 24, 2016. (*Id.* at 36.)

appealed the denial of post-conviction relief to the TCCA. The TCCA affirmed, and on January 18, 2019, the Tennessee Supreme Court denied the petitioner's application for permission to appeal the TCCA's decision. *Blacksmith v. State*, No. M2017-02323-CCA-R3-PC, 2018 WL 4584126 (Tenn. Crim. App. Sept. 24, 2018), *perm. app. denied* (Tenn. Jan. 18, 2019); (Doc. Nos. 9-19–9-23).

The petitioner submitted his pro se Section 2254 petition to prison authorities for mailing on December 30, 2019. (*See* Doc. No. 1 at 106.) The petition was received and filed in this court on January 10, 2020.

**III. Analysis**

A. <u>Timeliness of the Petition</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214 (1996), habeas petitions are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1); *Holland v. Florida*, 560 U.S. 631, 635 (2010). Here, as in most cases, the limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Following the Tennessee Supreme Court's denial of discretionary review on November 24, 2015, the petitioner had ninety days in which to take the final step in the direct appeal process by filing a petition for writ of certiorari in the U.S. Supreme Court. Because he did not file such a petition, his conviction became final at the conclusion of this ninety-day period, on February 22, 2016. *Gonzalez v. Thaler*, 565 U.S. 134, 149 (2012); *Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009). The running of the statute of limitations is counted from the following day, February 23, 2016. *See* Fed. R. Civ. P. 6(a)(1)(A) (when computing a time period "stated in days or a longer unit of time

3

. . . exclude the day of the event that triggers the period"); *Bronaugh v. Ohio*, 235 F.3d 280, 284 (6th Cir. 2000) (applying Rule 6(a)'s standards for computing periods of time to habeas filing).

However, "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2). Giving the petitioner the benefit of the doubt, the court deems his pro se post-conviction petition filed on March 24, 2016—the date it was stamped "received" in the prison mailroom. (*See* Doc. No. 9-16 at 36); Tenn. Sup. Ct. R. 28, § 2(G).[2] The period of statutory tolling thus began on March 24, 2016 (the 29th day after the statute began to run) and continued until January 18, 2019, when the Tennessee Supreme Court denied the petitioner's application for permission to appeal the TCCA's decision affirming the denial of post-conviction relief. The one-year limitations period resumed running the next day, on January 19, 2019. *Lawrence v. Florida*, 549 U.S. 327, 331–32 (2007). At that point, the petitioner had 336 days (365 minus 29) remaining —or until December 23, 2019[3]—in which to file a timely federal habeas petition.

While the court did not receive the Petition in the mail until January 10, 2020 (eighteen days after the limitations period expired), this date of receipt is not determinative of the Petition's timeliness. Rule 3(d) of the Rules Governing Section 2254 Proceedings (hereinafter, "Habeas

---

[2] It is not entirely clear whether the prison mailbox rule applies to a post-conviction filing that is indisputably timely, as was the petitioner's in this case. *See Shade v. Washburn*, No. 3:19-cv-051, 2019 WL 3557872, at *1 n.1 (E.D. Tenn. Aug. 5, 2019) (noting that Tenn. Sup. Ct. R. 28, § 2(G) "does not specify the date" to deem filed a pro se prisoner's timely post-conviction filing). But because the TCCA has deemed a timely post-conviction petition filed when it was "presented to prison officials for mailing," *see Dowell v. State*, No. M2016-01364-CCA-R3-PC, 2017 WL 2859010, at *6 & n.3 (Tenn. Crim. App. July 5, 2017) (citing Tenn. R. Crim. P. 49(d) and Tenn. Sup. Ct. R. 28, § 2(G)), this court will do the same here. *See Lopez v. Tennessee*, No. 2:19-cv-00055, 2020 WL 836548, at *2 & n.1 (M.D. Tenn. Feb. 20, 2020).

[3] Because the 336th day fell on Saturday, December 21, 2019, the petitioner's filing deadline was extended until Monday, December 23, 2019—"the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C).

4

Rules") determines the date of filing for any paper submitted by an inmate in a habeas case, as follows:

> **(d) Inmate Filing.** A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

*See Sawyers v. United States*, No. 3:05-0428, 2005 WL 3088580, at *1 n.2 (M.D. Tenn. Nov. 17, 2005) (applying identically worded rule to determine date § 2255 motion was filed). This rule memorializes, in the Section 2254 context, the prison mailbox rule of *Houston v. Lack*, 487 U.S. 266 (1988), in which the Supreme Court deemed a pro se prisoner's notice of appeal filed at the time he delivered it to prison authorities for mailing to the court clerk. *Id.* at 276. In 2016, the Sixth Circuit analyzed language from the then-current version of Federal Rule of Appellate Procedure 4(c) that is identical to that of Habeas Rule 3(d) and clarified that, "[i]n cases where a prisoner has access to a legal mail system, and uses it," the prisoner is not required to file the declaration or notarized statement referred to above; deposit of the prisoner's paper into the legal mail system on or before the last day for filing is sufficient to take advantage of the rule. *United States v. Smotherman*, 838 F.3d 736, 738 (6th Cir. 2016).

Here, the petitioner had access to a legal mail system but did not succeed in using it until December 30, 2019, one week after his deadline of December 23, 2019. The petitioner's access to a legal mail system is established by the envelope in which his Petition was mailed to the court, which bears a stamp confirming that it was received in the "RMSI Mailroom," was designated as "Outgoing Legal" mail, and was not inspected or censored by RMSI. (Doc. No. 1 at 106–07.) The record thus shows that the petitioner did not deposit the Petition in the legal mail system in time.

5

Even if RMSI did not have "a system designed for legal mail," the petitioner could not benefit from Habeas Rule 3(d) given that he has not proved that his Petition was timely submitted for mailing with first-class postage prepaid on or before December 23, 2019. "The postage requirement is important: [M]ail bearing a stamp gets going, but an unstamped document may linger." *Leavy v. Hutchison*, 952 F.3d 830, 832 (6th Cir. 2020) (quoting *United States v. Craig*, 368 F.3d 738, 740 (7th Cir. 2004)). An inmate's mailing that lacks "evidence showing prepayment of postage . . . is not entitled to the benefit of the prison mailbox rule." *Curney v. United States*, No. 17-2193, 2017 WL 6762223, at *1 (6th Cir. Nov. 28, 2017). Here, not only do the petitioner's filings fail to conform to the requirements of Habeas Rule 3(d), they affirmatively establish that he is not entitled to the benefit of that rule.

In the Notice accompanying his Petition (Doc. No. 2, dated December 28, 2019), the petitioner advised that he "had put [the] Petition in the R.M.S.I. mailing system" on an unspecified date but "the institutional mailing system sent the petition back, without mailing it to the court," because he "did not have fun[d]s to pay for filing fees and mailing." (*Id.* at 1.) The Notice further states that RMSI "do[es] not allow family and friends to send stamps to prisoners," though it says nothing about prisoners' ability to receive funds with which to buy stamps. (*Id.*) The following documentation of the petitioner's attempt to submit his Petition for mailing is attached to the Notice:

> (1) the petitioner's "Trust Fund Account Personal Withdrawal Request," executed on December 12, 2019 in the amount of five dollars, to pay "legal mail postage" (*id.* at 4);
>
> (2) his December 12 request "to be able to send legal mail along with court filing fees of [five] dollars to be taken out of my account," which drew two responses from the institution—its December 16 response that, "[i]n order to process your request, the mail must be open so trust fund can put the check into the envelope[,] [o]therwise the mail will be sent without the check," and its December 20 response that the request to

6

> withdraw five dollars for postage and filing fees could not be processed "due to insufficient funds" in the petitioner's trust account (*id.*); and
>
> (3) the petitioner's December 26, 2019 inquiry to a counselor relating his need to secure postage due to "a deadline [that is] really close," and the counselor's response on December 27 that he "sent [an] e-mail to Ms. Smith in Trust Fund."

(*Id.* at 2.) These documents confirm that the petitioner's attempt to mail his Petition by December 23 was frustrated first by his submission of a sealed envelope alongside a request for a check to pay the filing fee, and subsequently by a lack of funds in his account to pay for the institution to apply the necessary postage. They show, in other words, that he was unable to timely and properly deposit his Petition with prison authorities for mailing.

It is the petitioner's burden to prove that he is entitled to benefit from the prison mailbox rule. *See Leavy*, 952 F.3d at 832 (finding that habeas petitioner's submissions "do not suffice to demonstrate a timely filing . . . [u]nder the prison mailbox rule"); *Smotherman*, 838 F.3d 736, 738–39 (stating that inmate "always held the burden of proving timeliness," under prison mailbox rule or otherwise). In this case, the petitioner has failed to carry that burden. His filings establish that the Petition was deposited in the RMSI mailroom on December 30, 2019—one week past the deadline under 28 U.S.C. § 2244(d)(1). Accordingly, the only remaining issue is whether the court should nonetheless reach the merits of the Petition because the petitioner is entitled to equitable tolling of the limitations period.

B. Equitable Tolling

The expiration of the statutory limitations period does not act as a jurisdictional bar to habeas relief; thus, the statute may be equitably tolled in appropriate cases. *Holland*, 560 U.S. at 645–49. However, the doctrine of equitable tolling is used sparingly and is typically applied "only when a litigant's failure to meet a legally mandated deadline unavoidably arose from

7

circumstances beyond that litigant's control." *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003) (citing *Graham–Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 560–61 (6th Cir. 2000)). It is the petitioner's burden to show that he is entitled to equitable tolling, *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002), a burden he may carry by showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649; *see also Stiltner v. Hart*, 657 F. App'x 513, 520 (6th Cir. 2016).

The respondent argues that the petitioner has not carried this burden, in that his failure "to know the amount of funds in his trust fund account, . . . to submit an unsealed envelope to prison mailing authorities, and . . . to request help or assistance in filing his petition without the necessary funds were all within his control" and did not present extraordinary circumstances preventing timely filing. (Doc. No. 10 at 21.)

The court cannot agree that the petitioner failed *entirely* to request assistance in mailing the Petition without payment of postage prior to his deadline. He submitted a request to withdraw five dollars from his trust account, for the sole purpose of paying for "Legal Mail postage," on December 12, 2019. (Doc. No. 2 at 4.) He clearly created a problem for himself when he submitted a separate request that same day to include a check for the five-dollar habeas filing fee in the same, sealed envelope as the Petition, which delayed the processing of his withdrawal request and the discovery that he had insufficient funds to fulfill that request. (Doc. No. 2 at 3.) But despite this delay—and although it was not until three days after the limitations period expired that the petitioner requested immediate assistance with postage due to a "really close" deadline (*see id.* at 2)—he made his need for assistance with postage on legal mail (if not the urgency of that need)

8

known to the institution during the limitations period, a few days prior to the filing deadline. (*See id.* at 3 (trust fund office's December 20 acknowledgment of insufficient funds for postage).)

It is, however, this proximity between the petitioner's filing deadline and his urgent efforts to arrange for mailing that prevents equitable tolling of the statute of limitations in this case. In order to justify equitable tolling, the petitioner must show that timely filing was prevented by an extraordinary circumstance "both beyond [his] control . . . and unavoidable with reasonable diligence." *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012). Even if the institution's failure to respond with all dispatch to the petitioner's need for assistance with postage was an extraordinary circumstance beyond the petitioner's control,[4] such circumstance could have been avoided with reasonable diligence. A petitioner's "lack of diligence strongly cuts against [his] request" for equitable tolling; "[t]hose unwilling to help themselves are not compelling candidates for equitable assistance from the courts." *Thomas v. Romanowski*, 362 F. App'x 452, 455 (6th Cir. 2010). And "a component of the obligation to pursue rights diligently is not to wait until near a deadline to make a filing, then seek equitable tolling when something goes awry." *Schmitt v. Zeller*, 354 F. App'x 950, 951–52 (5th Cir. 2009) (citing *Johnson v. Quarterman*, 483 F.3d 278, 287–88 (5th Cir. 2007)); *see Lyons v. Emerick*, 187 F. App'x 219, 222 (3d Cir. 2006) (declining to equitably toll statute of limitations for prisoner who requested document necessary for filing ten days before deadline, but did not receive document from prison authorities until three days after deadline; finding that prisoner was not reasonably diligent in "wait[ing] until the last minute[,] when his schedule was derailed by a delay[,] for the paperwork necessary to file his complaint in forma pauperis") (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005) ("Had petitioner

---

[4] *But see Morrison v. United States*, No. 07-CR-3 (LAP), 2021 WL 1635852, at *3 (S.D.N.Y. Apr. 26, 2021) ("Difficulties in purchasing or otherwise obtaining postage—a common problem in the prison system—are not a rare or extraordinary circumstance worthy of equitable tolling.").

9

advanced his claims within a reasonable time of their availability, he would not now be facing any time problem[.]")); *Bernal v. Davis*, No. MO:18-CV-00074-DC, 2018 WL 9815615, at *4 (W.D. Tex. Dec. 11, 2018) (finding that, regardless of whether the prison system caused confusion as to amount of postage necessary to mail petition, it "did not cause Petitioner to squander away his year-long AEDPA deadline until such time as any error in filing would be held against Petitioner," so equitable tolling is not justified); *see also Hernandez v. Holder*, 457 F. App'x 487, 493 (6th Cir. 2012) (finding that time for filing application for protected immigration status could not be equitably tolled where applicant "essentially waited until the eleventh hour to submit an application, but faults [the agency] for failing to process" it in time for filing before deadline). After state post-conviction proceedings concluded on January 18, 2019, the petitioner had a full eleven months out of the twelve-month limitations period in which to file his Section 2254 Petition, yet failed to attempt such filing until, at the earliest, eleven days prior to his deadline. This is not reasonable diligence. Accordingly, the petitioner has not carried his burden of demonstrating entitlement to equitable tolling.

Finally, the petitioner makes no claim of actual innocence of the charges of conviction, such that the court could reach the merits of his Petition despite its untimeliness. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (allowing that actual innocence can operate in rare cases as an "equitable exception to § 2244(d)(1)," rather than grounds for tolling).

C. <u>Alternative Analysis of Petition's Merits</u>

Alternatively, the Petition lacks merit. The petitioner claims (1) that his due process rights were violated when he was deprived of a preliminary hearing on the felony charges against him, and (2) that he was deprived of the effective assistance of counsel when trial counsel denied him his right to testify in his own defense, failed to present credible witnesses on his behalf, and failed

10

to investigate or prepare adequately (a failure he also lays at the feet of appellate counsel), and when post-conviction counsel failed adequately to prepare, investigate, amend the petition, and call witnesses at the evidentiary hearing according to the petitioner's desires. (Doc. No. 1 at 15–18.)

As to the claim that the petitioner was denied a preliminary hearing under state procedural rules in violation of his right to due process, "there is no federal constitutional right to a preliminary hearing," *Patterson v. Gray*, No. 20-3872, 2020 WL 6778410, at *2 (6th Cir. Nov. 9, 2020) (citing *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965)), "nor is a preliminary hearing a critical stage" under state law. *State ex rel. Weston v. Henderson*, 413 S.W.2d 674, 675 (Tenn. 1967). This claim is thus not cognizable on federal habeas review. *Patterson*, at *2.

The petitioner's claim of ineffective assistance of post-conviction counsel is also not cognizable in federal habeas. "Since a petitioner has no Sixth Amendment right to counsel in a post-conviction proceeding, it therefore follows that counsel cannot be ineffective for not taking all possible steps to fully develop the claim that the petitioner wishes she had." *Hugueley v. Mays*, 964 F.3d 489, 500 (6th Cir. 2020). At best, counsel's deficient performance at an *initial* post-conviction proceeding can operate to excuse the procedural default of a claim of trial counsel's ineffectiveness, *Atkins v. Holloway*, 792 F.3d 654, 659 (6th Cir. 2015) (citing, *e.g.*, *Martinez v. Ryan*, 566 U.S. 1 (2012)), but not the default of a claim of ineffective counsel on direct appeal. *Davila v. Davis*, 137 S. Ct. 2058 (2017).

According to the respondent, the petitioner's claims that trial counsel failed to investigate or adequately prepare a defense, and that appellate counsel failed to investigate or raise meritorious arguments, were procedurally defaulted because they were not raised before the Tennessee Court of Criminal Appeals (TCCA), or not raised in state court at all. (Doc. No. 10 at 25–26.) Again, the

11

defaulted trial-counsel claims could only be excused by a showing of ineffective assistance of counsel in initial post-conviction proceedings, not ineffectiveness in failing to raise the issues on post-conviction appeal. *Atkins*, 792 F.3d at 661. Even if the petitioner's claims of trial counsel's ineffective investigation and preparation were defaulted during initial post-conviction proceedings and therefore could be reached upon a showing of post-conviction counsel's deficient performance, the petitioner has offered no grounds for finding that his trial-counsel claims are "substantial," that is, that they "ha[ve] some merit" justifying their adjudication despite the default. *Id.* at 657–60 (reciting the *Martinez* standard that "a procedural default will not bar a federal habeas court from hearing *a substantial claim* of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective") (emphasis added). As the respondent points out, the post-conviction trial court generally credited trial counsel's testimony regarding his pretrial advocacy and "d[id] not find the petitioner's testimony to be credible." (Doc. No. 9-14 at 53.) The petitioner has not demonstrated any reason to find substantial his nonspecific claims that trial counsel failed to adequately investigate or prepare for trial.

In sum, the petitioner's defaulted and noncognizable claims are not subject to further habeas review.

The remaining claims of the Petition are ineffective-assistance claims that were properly exhausted before the TCCA, asserting that trial counsel denied the petitioner his right to testify in his own defense and failed to present credible witnesses on the petitioner's behalf. Such claims are subject to the two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing the petitioner; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the petitioner of a fair trial. *Id.* at 687. To meet

12

Case 3:20-cv-00036   Document 15   Filed 02/15/23   Page 12 of 15 PageID #: 1355

the first prong, the petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [he] must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688–89 (quoting *Michel v. State of La.*, 350 U.S. 91, 101 (1955)). The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). It requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

When an exhausted claim of ineffective assistance of counsel is raised in a federal habeas petition, review under AEDPA is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009), in that "*Strickland* requires deference to counsel and AEDPA requires deference to the state court." *Moody v. Parris*, No. 20-5299, 2022 WL 3788503, at *4 (6th Cir. Aug. 30, 2022). The question then is not whether the petitioner's counsel was ineffective; rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). In this case, the TCCA analyzed the petitioner's claims under *Strickland*, as follows:

> With respect to the Petitioner's argument that trial counsel failed "to call witnesses to rebut the victim's testimony," we note that the Petitioner failed to present those witnesses at the post-conviction hearing. This court has long held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Generally, "this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand

> resulted in the denial of critical evidence which inured to the prejudice of the petitioner." *Id.* We cannot speculate as to what a witness may have said if presented or how the witness may have responded to a rigorous cross-examination. *Id.* As such, this issue is without merit.
>
> Finally, the Petitioner argues that trial counsel gave him "incorrect advice" regarding his decision not to testify at trial. Trial counsel testified that he "strongly advised" the Petitioner against testifying at trial "because of his record." The Petitioner admitted to having five prior felony convictions. Regardless of his advice, trial counsel believed that "what [the Petitioner] did was his choice." The post-conviction court chose to accredit trial counsel's testimony and found the Petitioner's testimony not to be credible. The record does not preponderate against these findings. Furthermore, the Petitioner was questioned about his decision not to testify under oath and told the trial court that he did not want to testify. It is well settled that a petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Accordingly, we conclude that this issue is also without merit.

*Blacksmith v. State*, 2018 WL 4584126, at *5.

In short, the TCCA reasonably applied *Strickland* to find that the petitioner failed to prove prejudice with regard to the trial witnesses called by counsel and failed to prove deficient performance or prejudice with regard to counsel's advice on the petitioner's decision not to testify. AEDPA therefore requires that the TCCA's resolution not be disturbed. *Woods v. Donald*, 575 U.S. 312, 316 (2015).

Accordingly, the untimely Petition is also subject to denial on the merits of its claims.

## IV. Conclusion

For the reasons stated above, the petitioner is not entitled to relief under Section 2254 and this action is therefore **DISMISSED**. In light of this disposition, the petitioner's motion to appoint counsel (Doc. No. 14) is **DENIED** as moot.

Because this constitutes a "final order adverse to" the petitioner, the court must "issue or deny a certificate of appealability." Habeas Rule 11(a). A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28

U.S.C. § 2253(c)(2). Where, as here, a habeas petition is "denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Because reasonable jurists could not find it debatable that the court is correct in its procedural ruling under the circumstances presented here, or in its alternative ruling on the merits, the court **DENIES** a certificate of appealability in this case. The petitioner may, however, seek a certificate of appealability directly from the Sixth Circuit Court of Appeals. Fed. R. App. P. 22(b)(1).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge